UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DISTRICT NO. 1-PCD, MEBA<br>PENSION PLAN, and its Trustees,<br>RON DAVIS and ROBERT DORN,<br>1007 Eastern Avenue<br>Baltimore, MD 21202, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | C. A. No. |
| v. | ) ) | |
| NATIONAL AIR TRAFFIC CONTROLLERS<br>ASSOCIATION, AFL-CIO<br>1325 Massachusetts Ave., NW<br>Washington, DC 20005, | ) ) ) ) ) | |
| Defendant. | ) ) | |

**COMPLAINT BY EMPLOYEE PENSION BENEFIT PLAN AND ITS TRUSTEES TO
COMPEL PAYMENT OF OVERDUE CONTRIBUTIONS, INTEREST AND FOR
OTHER RELIEF**

## INTRODUCTION

Plaintiffs, District No. 1-PCD, MEBA Pension Plan (the "Plan"), and its Trustees, Ron

Davis and Robert Dorn (collectively, the "Plaintiffs"), by their undersigned counsel, hereby

complain and allege as follows.

1.      This is an action under the Employee Retirement Income Security Act of 1974

(ERISA), 29 U.S.C. Sections 1001, *et seq.*, for contributions due and owing to an employee

pension benefit plan.

1

## PARTIES, VENUE AND JURISDICTION

2.      The Plan is a defined benefit, single employer employee pension benefit plan within the meaning of ERISA Sections 3(2)(A) and 3(41), 29 U.S.C. § 1002(3)(2)(A), (41). Established on or about 1972, the Plan originally was a non-collectively bargained pension plan, but effective August 1, 2003, it became a jointly-trusteed collectively bargaining pension plan within the meaning of Section 302(c)(5) of the Labor Management Relations Act of 1947, *as amended*, 29 U.S.C. 186(c)(5). The Plan provides retirement benefits to employees of participating employers in accordance with a plan of benefits as set forth in the Pension Trust's plan document.

3.      Plaintiffs Davis and Dorn are trustees of the Plan. As such, they are fiduciaries with respect to the Plan within the meaning of ERISA Section 3(21), 29 U.S.C. § 1002(21) Section 502(a) (2) and (a) (3) of ERISA, 29 U.S.C. Section 1132(a) (2), (3).

4.      Defendant National Air Traffic Controllers Association ("NATCA") is, on information and belief, a tax-exempt, federal sector labor organization that, during the period 1990 - 1997, was affiliated with District No. 1-PCD, MEBA ("MEBA"). At all times material hereto, current and former NATCA employees have been participants in the Plan. As reported in its most recent actuarial valuation report, which covers the Plan as of January 1, 2004, approximately twenty (20) current and/or former employees of NATCA were participants in the Plan, all of whom vested and are therefore entitled to pension benefits from the Plan upon their retirement, in accordance with the Plan's rules and regulations.

5.    The Court has jurisdiction with respect to this action pursuant to ERISA Section 502(a)(3), (d), (e) and (f), 29 U.S.C. § 1132(a)(3), (d), (e) and (f), as well as 28 U.S.C. § 1391. Venue is proper in this jurisdiction pursuant to ERISA Section 502(e), 29 U.S.C. § 1132(e).

## FACTS

6.    Prior to August 1, 2003, the Plan was sponsored by MEBA, a tax-exempt labor organization that represents United States flag merchant mariners, as well as other employees employed primarily in the transportation industry.  MEBA originally established the Plan in order to provide pension benefits to MEBA's staff employees.

7.    Over the years, MEBA has also been the parent organization of several tax-exempt, autonomous affiliate labor organizations that represented employees primarily in the aviation and public sector industries ("MEBA affiliates").  Several of those MEBA affiliates subsequently disaffiliated from MEBA and either became stand-alone, independent labor organizations or affiliates of other AFL-CIO labor organizations.

8.    Over the years, several MEBA affiliates and tax-exempt fringe benefit plans that are employers in their own right opted to become participating employers in the Plan with respect to their non-collectively bargained staff employees.  Thus, until August 1, 2003, the Plan was a multiple employer pension plan that consisted of several tax-exempt employers.  For Internal Revenue Code ("IRC") purposes, at all relevant times it has also been treated as a single employer pension plan.  Effective August 1, 2003, a maritime employer that is party to a collective bargaining agreement with MEBA became a participating employer in the Plan.  Since that time, therefore, the Plan has been a collectively-bargained, jointly-trusteed, single-employer pension plan that provides benefits to the bargaining unit employees of the MEBA-contracted

3

company that participates in the Plan as well as the non-collectively bargained employees of various tax-exempt organizations that were at one time or another affiliated with MEBA.

9.      The Plan, at all relevant times, has been financed by contributions made by the employers whose employees are participants in the Plan. With respect to the employers whose non-collectively bargained former and current employees are participants in the Plan, the Plan's actuary has on an annual basis determined the proportionate share of the costs to be paid by each such employer based on the number of that employer's former and current employees who were covered by the Plan and the demographics of that employer's employee population. For certain years, no contributions were required to fund the benefits promised by the Plan, while in other years, substantial contributions were necessary. During the period covering 1990 through 1993, the Plan was fully funded within the meaning of the IRC, such that no contributions were immediately required in order to finance the accrued pension benefits payable to vested participants in the Plan. Although the employers whose non-collectively bargained employees were covered by the Plan were all tax-exempt entities that could have continued paying contributions to the Plan despite its fully funded status without incurring tax penalties, they chose to defer such contribution obligations. They each were required, however, to pay all necessary contributions to the Plan in the event that the Plan became less than fully funded for IRC purposes.

8      NATCA affiliated with the MEBA in 1990. In a letter dated July 2, 1990, NATCA's Executive Vice President notified the Plan that NATCA wished to contribute to the Plan on behalf of its staff employees. NATCA thus became a participating employer in the Plan effective January 1, 1990 and, like other participating employers affiliated with the MEBA,

4

agreed to pay contributions to the Plan on behalf of its employees. Many of NATCA's staff employees accrued vested benefits under the Plan. When NATCA advised the Plan that it wished to participate in the Plan, it also advised the Plan's administrator that it agreed to pay for certain past credited service as well as the normal cost (the amount of liabilities attributable to an employer's employees plus a share of plan expenses) attributable to its employees when and if the Plan were no longer fully funded. A true and correct copy of the above-referenced July 2, 1990 letter is attached hereto as Exhibit 1.

9.     Just as over the years several labor organizations have affiliated with MEBA, several have also disaffiliated from the MEBA.

10.     Following disaffiliation from MEBA, the Plan has remained, and does today remain, under a continuing obligation to safeguard and pay the accrued benefits of those disaffiliated organizations' employees who earned those benefits while their employers were affiliated with the MEBA.

11.     NATCA is one such labor organization that disaffiliated from MEBA. It did so in 1997. Approximately twenty (20) NATCA employees have accrued vested benefits under the Plan, and the Plan remains responsible for paying those benefits when the participants attain retirement age and otherwise meet the requirements for a pension under the terms of the Plan.

13.     The Plan's administrator, located in Baltimore, Maryland, has notified NATCA annually since 1994 (*i.e.*, the year for which the Plan ceased to be fully funded) of its obligation to pay its share of contributions owed as of the end of the Plan year ending the prior December 31, and its share of Plan expenses for that year. Contributions were assessed of NATCA and other employers whose employees are participants in the Plan because the Plan was less than

fully funded in those years under IRS rules.  Expenses were calculated by the Plan actuary on a per capita basis.

14      The total amount of contributions and expense due from NATCA for all periods through December 31, 2004 is $537,600 as shown in the Plan administrator's most recent assessment, darted September 6, 2005.  A true and correct copy of that assessment is attached hereto as Exhibit 2.

15.     NATCA has failed to pay its share of contributions and expenses notwithstanding the Plan's continued efforts to collect the amounts due from NATCA.

**COUNT I**
**COMPLAINT FOR CONTRIBUTIONS AND EXPENSES**
**DUE UNDER AN ERISA PLAN**

16      Paragraphs 1 through 15 are incorporated by reference.

17.      NATCA's undertaking to pay its share of normal costs of the Plan in 1990 and thereafter, and its payment of contributions thereafter, and its employees' accrual of benefits under the Plan and the Plan's undertaking to pay those benefits, constituted an enforceable agreement between the Plan and NATCA pursuant to which NATCA was obligated to pay its proportionate share of contributions and expenses to the Plan.

18.     NATCA has failed to pay its share of contributions and expenses as assessed annually by the Plan's administrator, most recently in September 2004.

**RELIEF REQUESTED**

WHEREFORE, the Plaintiffs respectfully request the following relief on behalf of the Plan:

A.    A judgment against Defendant and on behalf of the Plaintiffs, pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), for –

(i) An injunction requiring NATCA immediately to pay all outstanding contributions to the Plan, which amounts constitute its proportionate share of contributions and expenses to the Plan, as determined by the Plan's actuary, together with reasonable interest;

(ii) Attorney's fees and costs; and

(iii) Post-judgment interest computed and charged on the entire judgment balance; and

(iv) Such other relief as the Court deems appropriate.

Respectfully submitted,

Edward M. Gleason, Jr., DC Bar No. 429325
H. David Kelly, DC Bar No. 471254
A. Viet Ly, D. C. Bar No. 485142
Beins, Axelrod, Gleason & Gibson, P.C.
1717 Massachusetts Ave., NW
Suite 704
Washington, DC 20036
(202) 328-7222
Facsimile (202) 328-7030

Attorneys for Plaintiff Trustees and MEBA

September 21, 2005

7